## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STEEL WORKERS AFL-CIO**                    **CIVIL ACTION**

**VERSUS**                                          **No. 07-5309**

**MURPHY OIL USA, INC.**                            **SECTION "C"** (3)


### ORDER AND REASONS

Before the Court is a motion by defendant Murphy Oil USA, Inc., ("Murphy") to dismiss the complaint of plaintiff United Steel Workers AFL-CIO, the union representing Earl Dauterive, as untimely, pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6).  Rec. Doc. 4.  In addition, the plaintiff has moved for leave to file a first amended complaint, which Murphy opposes.  Rec. Docs. 5 and 11.  The Court has reviewed the motions, memoranda, and applicable law, and finds that the motion by plaintiff for leave to amend its complaint should be GRANTED, and that the motion to dismiss by Murphy should be DENIED.


### Plaintiff's Motion for Leave to Amend Complaint

As a preliminary matter, the Court notes that the plaintiff seems to have unnecessarily filed a motion for *leave* to amend its complaint.  Though it appears from the plaintiff's motion that they sought consent from Murphy to its motion, that consent was not forthcoming.  Murphy

has no basis in law for opposing plaintiff's present amendment to its complaint.  Under

FED.R.CIV.P. 15(a), a party may amend its pleading once as a matter of course at any time before

a responsive pleading is served.   Murphy has chosen to file a motion to dismiss rather than

answering the complaint, and such a motion is not a responsive pleading that extinguishes a

plaintiff's right to amend the complaint.  FED.R.CIV.P. Rule 7(a); *see also Caine v. Hardy*, 905

F.2d 858, 863 (5th Cir. 1990) (opinion superseded on other grounds on rehearing), *Zaidi v.*

*Ehrlich*, 732 F.2d 1218, 1219-20 (5th Cir. 1984).  The plaintiff in this case has not previously

amended its complaint, and therefore has the right to amend it.  Furthermore, even if granting

leave were discretionary with the Court, leave would be granted, though the amendment is

unnecessary in light of the Court's ultimate ruling.


<u>Defendant's Motion to Dismiss Complaint as Untimely</u>

I.

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter

jurisdiction is the same as that for a Rule 12(b)(6) motion.  *U.S. v. City of New Orleans*, 2003

WL 22208578 (E.D.La. Sept. 19, 2003); *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992).  This

Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the

plaintiff,  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.

2004), and  cannot dismiss a complaint under Rule 12(b)(6) unless it appears beyond a doubt that

the plaintiff cannot prove a plausible set of facts in support of his claim which would entitled

him to relief.  *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007).

A.

Murphy argues that the complaint is untimely, and should be dismissed pursuant to

FED.R.CIV.P. 12(b)(1) and 12(b)(6), and states that the only facts required to resolve this motion

are admitted in the complaint.  The original complaint alleges that: plaintiff and defendant are

parties to a collective bargaining agreement under which resolution of all disputes and

grievances is conducted through a grievance/arbitration procedure; the parties arbitrated a

grievance filed over Earl Dauterive's discharge before arbitrator Patrick Halter, chosen by both

parties;  and that on August 29, 2006, the arbitrator issued an award, directing Murphy to

reinstate Dauterive "with backpay (minus earned income)...."  The plaintiff brought the instant

action in this Court on August 31, 2007, just over a year after the arbitration award was issued.

In addition, the first amended complaint alleges in more detail the interactions between

the plaintiff and Murphy in the time since the arbitration award was entered on August 29,

2006.[1]  It states that Murphy has partially complied with the award by reinstating Mr. Dauterive

on October 16, 2006 but that Murphy has refused to pay his backpay for the period of his

separation from service.  It further lists the interactions between the parties during this period,

including several requests by Dauterive to Murphy's Human Resources Manager for back pay

---

[1] The original complaint simply states that the union "has unsuccessfully sought resolution of the dispute." Rec. Doc. 1, at ¶ 10.  As noted above, this Court need not rely on the facts alleged in the amended complaint to resolve the timeliness issue in favor of the union.  The amended complaint does, however, add further support for an alternative basis for finding the complaint to be timely, as discussed below, Part II.

3

data, requests by Murphy for information in order to prepare its own backpay and benefits

calculation , submission by Mr. Dauterive of his accountant's calculation to Murphy, Murphy's

response contesting that calculation, subsequent meetings between the parties to resolve the

contentions, an agreement to exchange settlement proposals, and the exchange of those

proposals, which occurred during July of 2007.  Rec. Doc. 5-3, at 2-3.  On August 22, 2007, the

union proposed to the human resources manager at Murphy that the Dauterive matter be

resubmitted to the arbitrator for determination of the make whole remedy.  *Id.* at 4, ¶ 10(o).

Finally, on that same day, the HR manager responded, refusing to return to the arbitrator and

indicating that "it [was his or her] understanding the attorneys have agreed [that] the Union will

file a lawsuit in federal court."  *Id.* at 5, ¶ 10(p).  The plaintiff further alleges that there was in

fact an agreement between the parties to submit the matter to this Court, and that consistent with

that agreement, the action was commenced four days after its confirmation.  *Id.*, ¶ 10(r) and (s).

The union submits that the arbitrator is best suited to resolve their dispute, and seeks an

order from this Court remanding the matter to the original arbitrator for final determination.

Alternatively, the union seeks a judicial determination of the backpay due under the terms of the

arbitrator's award.  In addition, the union seeks attorneys' fees and costs for the prosecution of

this action.

B.

There is no federal statute of limitations expressly applicable to this suit, brought under

Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  In such

a situation, it is the task of this Court to "borrow" the most suitable statute or other rule of

4

timeliness from some other source. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158

(1983). Generally, the Supreme Court has concluded that courts should apply the statute of

limitations from the most closely analogous state law. *Id.* However, when another federal

statute provides a closer analogy and when the state period poorly serves the policies underlying

the federal cause of action, it is appropriate to borrow a federal limitations period. *Id.* at 171-72;

*Aluminum, Brick and Glassworkers, International Union Local 674 v. A.P. Green Refractors,*

*Inc.*, 895 F.2d 1053, 1054 (5th Cir. 1990). Though labor law is highly specialized and nuanced,

it can briefly be stated that federal policy, as captured by federal labor laws and as recognized by

the Supreme Court, reflects a goal of relatively rapid disposition of labor disputes, *Int'l Union,*

*United Auto., Aerospace and Agr. Implement Workers of America (UAW), AFL-CIO v. Hoosier*

*Cardinal Corp*, 383 U.S. 696, 707 (1966), a strong preference for industrial self-government,

settlement of disputes by the parties through the machinery of arbitration, and for narrow judicial

inquiry into arbitration awards, *United Steelworkers of America v. Warrior & Gulf Navigation*

*Co.*, 363 U.S. 574, 581-82 (1960), and a need for general national uniformity of the law in this

area. *Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962).

Murphy suggests several alternative sources from which to "borrow" a statute of

limitations period, under each of which the plaintiff's complaint would be untimely. First, they

suggest the Federal Arbitration Act ("FAA"), which requires an aggrieved party to serve notice

upon the opposing party within three months of the issuance of an arbitration award of a federal

lawsuit brought to modify, vacate or correct the award. *See* 9 U.S.C. § 12 (2007). Murphy next

suggests the Court could borrow the statute of limitations from Section 10(b) of the National

Labor Relations Act ("NLRA"), which the Supreme Court found applicable in a Section 301

claim against a union for breach of its duty of fair representation in *DelCostello*. 462 U.S. 151.

The Fifth Circuit has applied this six-month limitations period in suit to compel arbitration

brought under Section 301 of the LMRA.  *A.P. Green Refractories*, 895 F.2d at 1054-55.

Murphy contends that if federal law and policy compel use of this period to a union's effort to

compel arbitration, it should also be applied to efforts to enforce an arbitration award, such as in

the present case.   Finally, Murphy states that "if this Court elects to consult Louisiana law

instead of federal law"[2] in ascertaining the appropriate statute of limitations, it will find that the

Louisiana Arbitration Act ("LAA") provides a more liberal limitations period of one year for a

party to file a suit in state court for an order confirming a commercial arbitration award.  LA.

REV. STAT. ANN. § 9:4209 (West 2007).  Even under this more lengthy limitations period, the

plaintiff's complaint would be untimely.

     Murphy closes by invoking federal policy regarding labor arbitration, which it claims

confirms that dismissing the complaint as untimely is appropriate in this case.  Murphy quotes

---

[2] A careful reading of the Supreme Court's decisions in *DelCostello* and *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56 (1981) suggests that this Court does not have such discretion as to "elect" the appropriate statute of limitations.  The Court in *DelCostello* recognized the longstanding practice by the Court of assuming, where a federal statute does not itself expressly provide a statute of limitations, that Congress intended the courts to look to state law for the most closely analogous statute of limitations, even in those cases where state law "fails to provide a perfect analogy."  *DelCostello*, 462 U.S. at 171.  Only where when a federal law "*clearly* provides a closer analogy than available state statutes, *and* when the federal policies at stake and the practicalities of litigation make that rule a *significantly* more appropriate vehicle" should a court "turn away from state law."  *Id.* at 172 (emphasis added).  Thus this Court must look to state law first, and only if a federal limitations period is clearly more analogous, and significantly more appropriate when considering federal labor policy, should it look to federal alternatives.

*Mitchell* and its reasoning that "the system of industrial self-government, 'with its heavy emphasis on grievance, arbitration, and the 'law of the shop,' could easily become unworkable if a decision ... could suddenly be called into question as much as six years later.'"  Rec. Doc. 4, Memo. in support at 4, *quoting Mitchell*, 451 U.S. at 58-59, 64.   In addition, Murphy argues that applying longer limitations periods to Section 301 claims would "disserve" the federal interest in relatively rapid final resolution of labor disputes.  Rec. Doc. 4, Memo. in support at 5, *citing DelCostello*, 462 U.S. at 168.

The plaintiff, on the other hand, argues that the Louisiana "catch-all" prescription period for personal actions of ten years should apply.  LA. CIV. CODE  art. 3499.[3]

None of the situations invoked by Murphy involve a suit by a successful party to arbitration brought to *enforce* an arbitration award in labor dispute - they either involve suits by (presumably) dissatisfied parties to *vacate* or *modify* an award, by any party to *compel* arbitration, or for confirmation of a *commercial* arbitration award - and each is distinct from an action to enforce an award in significant ways when federal labor policy is taken into account. Federal policy, with its heavy emphasis on grievance, arbitration, and the "law of the shop," clearly seeks rapid resolution of *disputes*.  However, when an arbitration award has already been issued, the dispute is presumably over.  *See A.P. Green Refractories*, 895 F.2d at 1055.  Indeed, the strong emphasis on "industrial self-government" and in favor of settlement of disputes

_____

[3] The plaintiff also argues that, even if the Court were to adopt the six-month limitations period from the NLRA for suits to compel arbitration, its suit would still be timely because any such period only began running when Murphy clearly announced that it refused to arbitrate.  It further argues that the limitations period should be subject to tolling in this case.  These arguments are discussed later in this opinion.

7

through arbitration, including the strong deference given by federal courts to the decisions of arbitrators, would suggest that courts apply more liberal limitations periods to actions to enforce an arbitrator's decision.  An argument for a shorter limitations period is  certainly more convincing for a case brought to challenge or undermine an arbitrator's decision - thus if Murphy were to bring an action to challenge the award in this case, such an action would likely be untimely.

Finally, there are significant differences between arbitration in a commercial context, such as that governed by the LAA, and arbitration of labor disputes that make simplistic analogy between the two inappropriate for present purposes.  When parties enter into a commercial contract, they do so voluntarily, *see Warrior and Gulf*, 363 U.S. at 580, and once parties to such a contract seek out the courts or arbitration, there has usually been a breakdown in their working relationship.  *Id.*  In such a case, such parties may, if they so choose, permanently walk away from each other.  Thus, it is reasonable to expect such parties to promptly resort to the courts for any action to confirm an arbitration award, such that they may resolve any disputes and separate as quickly as possible.  Parties to a labor agreement, however, have no real choice in entering or refusing to enter into a relationship.  *Id.*  They are also not free to just walk away.  Federal labor policy recognizes the need to ensure a working relationship between a union and an employer over time.  One may thus assume that the parties will abide by any arbitration award, and that they may, out of necessity, work together to resolve the precise scope of awards issued pursuant to a collective bargaining agreement.  It is thus reasonable to provide a longer time-frame in which to bring actions to enforce or confirm an award once it is issued, in the hope the parties

themselves will resolve any lingering differences.

Thus, if this situation presented a case of first impression to this Court, it would likely find that the longer state law statute of limitations should be applicable in such a suit under Section 301(a) of the LMRA to enforce an arbitration award.  However, the Fifth Circuit has already considered a highly analogous situation in Texas, and applied the longer, state default statute of limitations.  *Int'l Union of Electrical, Radio and Machine Workers, AFL-CIO-CLC v. Ingram Mfg. Co.*, 715 F.2d 886 (5th Cir. 1983).  A court in this district has applied *Ingram* to find that the applicable statute of limitations period to enforce an arbitration award in this state would be the catch-all Louisiana limitation period of ten years.  *United Paperworkers Int'l Union, AFL-CIO v. Gaylord Container Corp.*, 755 F.Supp. 158, 161 (E.D.La. 1991) (Mentz, J.).[4]

The *Ingram* court considered a similar case involving what it described as "a straightforward case under Section 301 of a union seeking to enforce an arbitration award and the company refusing to abide by the award."  There, however, the union argued that the 90-day FAA or Texas General Arbitration Act statutes should apply to the company's affirmative defenses.  Ingram argued that either the six month period of Section 10(b) of the NLRA, or the

_____

[4]  Moreover, several other circuits have adopted the longer state limitations periods for actions to enforce a labor arbitration award.  *See Derwin v. General Dynamics Corp*., 719 F.2d 484 (1st Cir. 1983) (finding it unnecessary to choose between Massachusetts 6-year limitations period for contract actions or its 20-year period for the enforcement of judgments, or whether the period for filing such actions should be completely unrestricted, as the union's action to confirm was timely under each approach); *Office & Professional Employees Int'l Union, Local NO. 471 v. Brownsville General Hospital*, 186 F.3d 326 (3rd Cir. 1999) (applying the six-year statute of limitations applicable to contract suits under Pennsylvania law); *Service Employees Int'l Union Local 36 v. City Cleaning Co.*, 982 F.2d 89 (3rd Cir. 1992) (same); *Int'l Brotherhood of Teamsters, Local 245 v. Kansas City Piggy Bank*, 88 F.3d 659 (8th Cir. 1996) (per curiam) (applying Misssouri's five-year statute of limitations for contract actions);

general four year Texas statute of limitations was applicable.

After finding that the *DelCostello* Court's decision to apply the NLRA limitations period (in a so-called "hybrid § 301/fair representation" suit by an employee against both his employer and the union) was not controlling in a typical case of a union or employer suing to vacate a labor arbitration award, *Ingram*, 715 F.2d at 888, the Fifth Circuit next turned to the most closely analogous state law, the Texas General Arbitration Statute. *Id.* at 889. This statute, however, contained a provision that made it inapplicable to any collective bargaining agreement between an employer and a labor union. *Id.* (*noting* TEX.REV.CIV.STAT.ANN. art. 224(a)). The court rejected the FAA as inapplicable in labor cases for the same reason; the FAA provides that it is not applicable to contracts involving employees in interstate commerce. *Id.* In conclusion, the court followed prior circuit precedent in applying the general Texas statute of limitations of four years. *Id.* The Fifth Circuit has since confirmed that the use of the longer statute of limitations is appropriate in enforcement actions, because "no uncertainty regarding the parties' rights remains" at this stage of the labor arbitration process. *A.P. Green Refractories*, 895 F.2d at 1055.

The Louisiana Arbitration Act, from which Murphy suggests that the court borrow the one year limitations period for seeking a court order "confirming" a commercial arbitration award, contains a similar exception for contracts of labor: "Nothing contained in this Chapter shall apply to contracts of employment of labor or to contracts for arbitration which are controlled by valid legislation of the United States or to contracts made prior to July 28, 1948." LA.REV.STAT. § 9:4216.

10

Although Murphy did not mention *Ingram* at all in its original memorandum, in its reply, Murphy does argue that the *Ingram* holding is "clearly limited to its facts and the interpretation of Texas law," and that the Louisiana statutory exception for labor contracts is different and more ambiguous than its Texas counterpart.[5]  However, the Court disagrees that the difference in the wording of the two provisions, or the less specific language of the Louisiana statute, would make it inapplicable here.  The collective bargaining agreement between Murphy and the union, on its face, is a "contract of employment of labor" and the behavior of the parties with regard to their agreement to arbitrate disputes is controlled by the LMRA, "valid legislation of the United States."

Murphy also argues that even if the LAA statute of limitations of one year might be inapplicable to this case if it were brought in state court, the LAA could still be the most analogous state law for borrowing purposes.  Murphy is correct in that "not applicable" is different from "not analogous."   However,  the significant contextual differences between commercial and labor arbitration, recognized by the Supreme Court in *Warrior & Gulf* and noted above, strongly weigh against simple analogy to the LAA for borrowing purposes.  This Court joins Judge Mentz in holding that *Ingram* is controlling such that the appropriate statute of limitations for an action to enforce an arbitration award under Section 301(a) of the LMRA is the Louisiana default prescription period for contract actions of ten years.

C.

---

[5] The Texas statute states in relevant part: "[N]one of the provisions of this Act shall apply to ... (a) any collective bargaining agreement between an employer and a labor union ...." TEX.REV.CIV. STAT.ANN. art. 224(a).

The Court's decision is supported by federal policy regarding labor disputes and collective bargaining agreements.   Taking plaintiff's allegations as true, it appears that the union and Mr. Dauterive attempted to work with Murphy for an entire year to resolve the precise scope of the arbitration award.  Murphy, though it disagreed about the scope of the remedy, also appears by its actions to have worked at resolution, for a time.  Subsequently, Murphy refused to return to the arbitrator and indicated that resolution could only be achieved by resort to this Court.  Murphy's course of action, as portrayed in the complaint (and amended complaint), could be construed as bait and switch;  it presented an appearance of cooperation through partial measures, but after almost a year had passed, Murphy finally stated that the matter could only be resolved through litigation in this Court, where it now argues that such an action is untimely.

Again, federal policy in this area reflects a strong preference for industrial self-government and the goal of rapid disposition of labor disputes, in order to serve the national interest in avoiding or mitigating industrial strife and facilitating ongoing production.  At the core of this policy is the strong preference for settlement of disputes by the parties, in light of their ongoing relationship, through the machinery of arbitration.  In this context, litigation is highly disfavored, because of its relatively higher expense and antagonism, and lower level of expertise in dealing with labor disputes and the "law of the shop:"

> The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts ... The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law - the practices of the industry and the shop - is equally a part of the collective bargaining agreement although not expressed in it .... The parties expect that his judgment of a particular grievance will reflect ... such factors as the effect upon

12

> productivity of a particular result, its consequence tot he morale of the shop, his
> judgment whether tensions will be heightened or diminished.   For the parties'
> objective in using the arbitration process is primarily to further their common
> goal of uninterrupted production under the agreement, to make the agreement
> serve their specialized needs.  The ablest judge cannot be expected to bring the
> same experience and competence to bear upon the determination of a grievance,
> because he cannot be similarly informed.

*Warrior & Gulf*, 363 U.S. at 581-82.  As a result of the clear preference for arbitration over

litigation in this area, judicial inquiry into the decisions of an arbitrator is strictly confined.

Murphy argues that short limitations periods serve the underlying purpose of labor

arbitration by "ensuring that the finality of arbitration awards are not subject to

attack/revisitation long after they are rendered,"  Rec. Doc. 4, memo. in support at 5, and that

applying a longer limitations period to this case would "disserve" the strong federal interest in

relatively rapid resolution of labor disputes.  *Id.*  This argument fails to recognize the significant

difference between a suit to challenge an arbitration award and a suit to enforce one.  Challenges

to an arbitrator's decision undermine, by nature, the reliance on arbitration and desire to

minimize litigation, and in any such challenge the arbitrator's decision is given great deference.

A suit to enforce an arbitration award, on the other hand, seeks only to uphold the arbitrator's

prior determination of the parties' rights.

Though the Louisiana ten-year prescription period may seem especially long - the

parallel Texas provision is four years - in light of the federal goal of relatively rapid disposition

of disputes, in practice this will likely not be a significant concern.  The goal of federal policy is

to get parties in a dispute to an arbitrator, and to get an arbitration award, as rapidly as possible.

Once an award is issued, however, the parties' rights have been settled.  There will then be a

natural incentive for a successful party to seek enforcement of that award, where necessary, as quickly as possible.

In most cases after an award is issued, it would be hoped that resort to an enforcement action in federal court will not be necessary.  But if courts applied a shorter statute of limitations, as Murphy suggests, successful parties to arbitration would be forced, often unnecessarily, to run to the courts for enforcement of the award whenever there was even a slight doubt the other party would fulfill its obligations under the award.   Here, after the key outlines of the parties' rights were determined by the arbitrator, it seems the plaintiff attempted in good faith to work with the defendant to determine the appropriate specific amount owed under the award as backpay.  With a brief limitations period, rather than attempting to work with the other party, a successful party would instead find it prudent to quickly commence litigation.  Conversely, a displeased party would need only feign cooperation and wait out a brief limitations period in order to avoid fully complying with the award.  Such a rule would thus create incentives that run counter to the federal policy in favor of settlement of disputes by the parties through arbitration rather than litigation, and would undermine the finality of arbitrators' decisions.  *See also Derwin*, 719 F.2d at 489-90 (distinguishing between the principal threat to the finality of arbitration awards, actions to modify or vacate them, and actions to confirm an award, and finding that a relatively lengthy limitations period for actions to confirm did not threaten the finality of arbitral awards).

II.

Alternatively, even if "borrowing" the ten year prescription period were not compelled by circuit precedent and federal policy and this Court were to look to the next most analogous statute of limitations, the NLRA period of six months for suits to compel arbitration, Murphy would still not meet its burden of showing that the plaintiff is untimely.[6]   The cause of action to compel arbitration under a collective bargaining agreement does not accrue until one party clearly refuses to arbitrate the dispute.  *A.P. Green Refineries*, 895 F.2d at 1055; *see also United Steel Workers of America AFL-CIO-CLC v. Murphy Oil, USA, Inc.*, 2000 WL 1341471, *1 (E.D.La. Sept. 14, 2000) ("A suit to compel arbitration must be brought within six months from the date when one party unequivocally refuses to arbitrate the dispute").  According to the allegations in the amended complaint, Murphy did not clearly refuse to arbitrate until August 22, 2007, when Murphy's HR manager stated that "under no circumstances will we agree to submit anything on paper to an arbitrator," or later.[7]  Thus, if this were more appropriately considered an action to compel arbitration, the complaint, filed on August 31, 2007,  would clearly be timely.

---

[6] The complaint is itself framed as a suit to enforce an arbitration award.  Rec. Doc. 1, ¶ 1.  The dispute seems to be over the scope of that award, rather than for new arbitration that would be outside of its original scope.  In addition, the defendant does not argue that the NLRA statute of limitations should apply because this *is* a suit to compel arbitration; rather, Murphy argues it should be analogized to such a suit for borrowing purposes.  However, the plaintiff does seek to return to the arbitrator for further resolution of this dispute, and thus it might be argued that this is a suit to compel arbitration.

[7] Plaintiff's motion in opposition states that the relevant date is August 27, 2007, when Murphy "confirmed" an agreement to seek judicial resolution. Rec. Doc. 6 at 6.  The complaint would clearly be timely in either case.

15

III.

Finally, the plaintiff argues that even if a shorter limitations period applied here, under which their complaint would technically be untimely, it should be subject to tolling in this case, where Murphy allegedly rejected a return to the arbitrator after the parties struggled for most of a year over the scope of the remedy following the issuance of the award, and then actively promoted resort to this Court.  If these allegations are true, the Court would have to agree with the plaintiff that Murphy's "Rule 12(b)(1) ambush smacks of something less than good faith bargaining and certainly inimical to our national labor policy which encourages peaceful, orderly resolution of labor disputes." Rec. Doc. 6, at 5.  Though it appears that the plaintiff might have strong arguments for tolling, this Court need not reach the issue in light of its determination that the ten-year Louisiana catch-all prescription period applies, or alternatively, that the complaint was timely even under the six month limitations period for actions to compel arbitration.

Accordingly,

IT IS ORDERED that the plaintiff's motion for leave to file its first amended complaint is hereby GRANTED.  Rec. Doc. 5.

IT IS FURTHER ORDERED that the defendant's motion to dismiss complaint as untimely is hereby DENIED. Rec. Doc. 4.

.    New Orleans, Louisiana, this 10th day of December, 2007.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE